[Cite as *State v. Jones*, 2012-Ohio-5737.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 98151**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DARNELL JONES

DEFENDANT-APPELLANT

---

**JUDGMENT:
AFFIRMED**

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-554197

**BEFORE:** Rocco, J., Sweeney, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 6, 2012

-i-

**ATTORNEY FOR APPELLANT**

Paul Mancino, Jr.
75 Public Square
Suite 1016
Cleveland, Ohio 44113-2098

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:   Kevin R. Filiatraut
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant Darnell Jones appeals from his convictions after the trial court found him guilty of two counts of rape and two counts of sexual battery.

{¶2} Jones presents five assignments of error.  In his first, second, and third assignments of error, Jones argues that his convictions are not supported by either sufficient evidence or the manifest weight of the evidence; he contends the evidence established neither that the victim was "substantially impaired" nor that one of the crimes was committed with force.

He further argues that the indictment upon which his convictions were

based was defective. Finally, he argues that his trial counsel rendered ineffective assistance in advising him both to try his case to the bench and to refrain from testifying on his own behalf, and also for failing to object to certain testimony.

{¶3} Upon a review of the record, this court cannot agree with Jones's arguments. Consequently, his assignments of error are overruled, and his convictions are affirmed.

{¶4} The incident that led to Jones's convictions occurred on December 17, 2010. The state's witnesses provided the following account of the circumstances surrounding the incident.

{¶5} Jones and the female victim both attended Cleveland State University. They had been acquainted for approximately two years, had friends in common, and a month or two previously, had been intimate on one occasion. According to the victim, after that occasion, she was no longer interested in having a sexual relationship with Jones.

{¶6} One of the friends Jones and the victim had in common was Patrick Cooper. Jones lived in the same apartment building as Cooper. The victim, who originally was from Buffalo, New York, considered Cooper to be the closest person that she knew in Cleveland.

{¶7} Cooper instituted a weekly tradition of having a Thursday evening party at the campus tavern. The victim often attended. On the night of the incident, the victim spent "three to four hours" at the party with Jones, Cooper, and Cooper's girlfriend, Danielle Ames. Jones purchased "at least four" vodka drinks for the victim, and Cooper also "bought [her] a couple drinks." Ames noticed the victim "had several different shots of liquor." The victim became intoxicated.

{¶8} During the time the victim was at the party, she sent text messages to her friend Shanelle Moon, who could not attend. In these messages, the victim described her inebriated condition and expressed some giddiness. Upon observing these messages, Moon became concerned enough to call Cooper, seeking reassurance that he would look after the victim.

{¶9} When it came time to leave, the victim "wasn't walking straight" and was "a little confused." She got into Jones's car with Cooper and Ames, and the four friends proceeded to Cooper's apartment, which was located "only five minutes away." They continued drinking and also "smoked marijuana" to the point that the victim "could barely move."

{¶10} After about an hour, Cooper and Ames indicated that they wanted to be alone. They aided the victim into her shoes and coat, and Jones assisted her to his apartment.

{¶11} As soon as the victim entered Jones's apartment, she "collapsed onto the couch," where she intended to sleep. However, she quickly felt nauseated, so she staggered into the bathroom, where she knelt in front of the toilet for a period of time. Jones followed the victim and began "rubbing [her] back and asking [her] if [she] was okay." The victim could only shake her head negatively.

{¶12} Eventually, Jones "helped [her] off the floor" and "put [her] in his bed." The victim felt her pants being removed before she passed out. The "next thing that [she] remember[ed], * * * [she] felt [Jones's] penis thrusting in [her] vagina." The victim opened her eyes to find Jones's face over hers. She pushed at his face and told him to "get off" her before she passed out again.

{¶13} The victim awoke the following morning in Jones's bed. She found her pants with her underwear still inside at the foot of the bed and saw Jones in the living room. When Jones noticed the victim was awake, he returned to the bedroom. The victim asked him, "what happened?" Jones responded that the victim was drunk and that they "did the hanky panky." Jones tried to repeat the experience "by put[ting] his hands on [her] thigh, on [her] stomach," but the victim refused; she got up, went into the bathroom, and dressed. When she emerged, Jones offered to drive her home. The victim told him she would walk, and then left.

{¶14} The victim proceeded to Cooper's apartment. She started to explain to Cooper what had occurred before she actually realized the situation; at that point, she "broke down crying." Ames could not hear what the victim was confiding, but Ames had never seen her "upset" before. Ames described the victim as "crying like hysterically," which was completely out of character.

{¶15} The victim spent most of the day in Cooper's apartment. Cooper asked Moon to meet them when he escorted the victim to her dormitory room. The victim told Moon about her experience, once again becoming extremely emotional, but expressed some hesitation about how to handle the situation. The following day, the victim went to her home in New York, where she sought out her oldest friend. The victim could not describe the incident without crying. She allowed herself to be persuaded to seek medical attention.

{¶16} Upon returning to Cleveland, the victim sought psychological counseling. A few months later, she reported the incident to the Cleveland police.

{¶17} Jones was indicted in this case on four counts. Count 1 charged him with rape in violation of R.C. 2907.02(A)(2), Count 2 charged him with rape in violation of R.C. 2907.02(A)(1)(c), and Counts 3 and 4 charged him with sexual battery in violation of R.C. 2907.03(A)(2) and (3).

{¶18} Jones retained counsel to represent him and later executed a jury waiver. At trial, the state presented the testimony of the victim and three of her female friends, along with the testimony of two police officers who investigated the case. After the trial court denied Jones's motion for acquittal of the charges, Jones elected to present no evidence.

{¶19} The trial court ultimately found Jones guilty on all counts. At sentencing, the state conceded that the crimes were allied offenses pursuant to R.C. 2941.25(A) and elected that the other three counts merge into Count 2. The trial court imposed a sentence on Jones of three years for his convictions.

{¶20} Jones presents the following assignments of error.

**I. Defendant was denied due process of law when the court found defendant guilty of the substantial impairment counts of the indictment.**

**II. Defendant was denied due process of law when he was convicted of forcible rape.**

**III. Defendant would be denied due process of law if he is not granted a new trial when the verdict is against the manifest weight of the evidence.**

**IV. Defendant was denied due process of law when he was convicted of offenses for which no culpable mental state was alleged in the indictment.**

## V. Defendant was denied effective assistance of counsel.

{¶21} Because they present interrelated issues, Jones's first, second, and third assignments of error will be addressed together. In them, he argues that his convictions on Counts 1, 2, and 3 for violating R.C. 2907.02(A)(1)(c), R.C. 2907.02(A)(2), and R.C. 2907.03(A)(2) were based upon insufficient evidence. He further argues that none of his convictions was supported by the manifest weight of the evidence.

{¶ 22} When reviewing sufficiency of the evidence, an appellate court must determine "[w]hether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶23} If the evidence is sufficient to support the conviction as a matter of law, the appellate court considers the claim that the judgment was against the manifest weight of the evidence. This test is much broader.

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. (Citations omitted). *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶24} Moreover, in reviewing the manifest weight of the evidence, this court must remain mindful that issues of credibility and weight are matters primarily for the trier of

fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶25} In Counts 1, 2, and 3, Jones was convicted of two counts of rape and one count of sexual battery. Pursuant to R.C. 2907.02(A)(2), "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Pursuant to R.C. 2907.02(A)(1)(c),

> No person shall engage in sexual conduct with another * * * when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition
> * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * .

{¶26} Similarly, pursuant to R.C. 2907.03(A)(2), "No person shall engage in sexual conduct with another, * * * when * * * [t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."

{¶27} Jones argues that, as to Count 1, there was no evidence of force and, as to Counts 2 and 3, there was no evidence of substantial impairment. "Force" is defined in R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." This court has consistently held that in situations in which "the victim is sleeping and thus not aware of the defendant's intentions, only minimal force is necessary to facilitate the act of rape." *State v. Fortson*,

8th Dist. No. 92337, 2010-Ohio-2337, ¶ 74, citing *State v. Clark*, 8th Dist. No. 90148, 2008-Ohio-3358, ¶ 17.

{¶28} In *Clark*, the defendant was found guilty of rape in violation of R.C. 2907.02(A)(2) when, after moving the victim's nightgown and underwear while she was sleeping, he inserted his finger into the victim's vagina. *Id.* at ¶ 6; *see also State v. Graves*, 8th Dist. No. 88845, 2007-Ohio-5430. The victim in this case testified that she felt Jones removing her pants, passed out, woke to find Jones on top of her, penetrating her vagina with his penis, and tried to push him away before she passed out again.

{¶29} Based on the victim's testimony, a rational trier of fact could have inferred that Jones used force to facilitate sexual conduct with the unconscious victim. This evidence is sufficient to prove rape in violation of R.C. 2907.02(A)(2).

{¶30} Likewise, "[t]his court has held that sleep constitutes a mental or physical condition that substantially impairs a person from resisting or consenting to sexual conduct." *Clark*, ¶ 21, citing *Graves*. When a person is unconscious, she is not in a mental condition to resist or consent to the sexual conduct.

{¶31} In *State v. Noernberg*, 8th Dist. No. 97126, 2012-Ohio-2062, ¶ 8-12, this court further noted:

[Noernberg] argues that the state failed to offer sufficient evidence either that the victim was substantially impaired or that he knew, or had reasonable cause to believe, that she was substantially impaired.

In *State v. Zeh*, 31 Ohio St.3d 99, 103, 31 Ohio B. 263, 509 N.E.2d 414 (1987), the Ohio Supreme Court held that because the phrase "substantially impaired" is not defined in the Ohio Criminal Code, it "must be given the meaning generally understood in common usage." The *Zeh* court also held that it is sufficient for the state to establish substantial impairment by offering evidence at trial establishing a reduction or decrease in the victim's ability to act or think. *Id.* at 103-104. "Substantial impairment does not have to be proven by expert medical testimony; rather, it can be shown to exist by the testimony of people who have interacted with the victim." *State v. Brady*, 8th Dist. No. 87854, 2007-Ohio-1453, ¶ 78.

In *In re King*, 8th Dist. Nos. 79830 and 79755, 2002-Ohio-2313, this court held that a person who engages in sexual conduct with another when that person's ability to resist or consent is substantially impaired by reason of voluntary intoxication is culpable for rape. *Id.* at ¶ 22, citing *State v. Martin*, 12th Dist. No. CA99-09-026, 2000 Ohio App. LEXIS 3649, 2000 WL 1145465 (Aug. 12, 2000). But we made clear that not "all persons who engage in sexual conduct with a voluntarily intoxicated person are culpable under R.C. 2907.02(A)(1)." *Id.* A person's conduct becomes criminal under this section only when "the individual knows or has reasonable cause to believe that the victim's ability to resist or consent is substantially impaired because of voluntary intoxication." *Id.*

Furthermore, R.C. 2901.22(B) defines "knowledge" as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶32} In this case, the victim testified that by the time she left Cooper's apartment,

she was so inebriated that she could "barely move." She further testified that while she

was inside Jones's apartment, she "passed out" more than once. Ames testified that, upon leaving Cooper's apartment, the victim required help to put on her shoes and coat and needed Jones's assistance to walk.

{¶33} Both the victim and Ames testified that the victim's state of drunkenness was obvious and that Jones was in the victim's vicinity the entire evening. Based upon their testimony, sufficient evidence was presented to prove both that the victim was "substantially impaired" and that Jones was aware of her condition, thus providing sufficient evidence to establish Jones's guilt on Counts 2 and 3 for violating R.C. 2907.02(A)(1)(c) and R.C. 2907.03(A)(2). *State v. Felton*, 8th Dist. No. 92295, 2010-Ohio-4105.

{¶34} Jones's convictions also find support in the manifest weight of the evidence. The victim's testimony was both consistent and corroborated by the testimony of the other three women, and the record reflects that the trial court based its ultimate decision on this fact.

{¶35} Moreover, in analyzing the evidence, the court described the victim's affect, i.e., during her testimony, the victim expended effort in maintaining her composure. According to the trial court, the victim appeared to "toss her head back and swallow" and rapidly tapped her foot "to alleviate [the] stress" of reliving the incident. This court cannot find on this record that the trial court lost its way in finding Jones guilty of the offenses.

{¶36} Accordingly, Jones's first, second, and third assignments of error are overruled.

{¶37} In his fourth assignment of error, Jones argues that he was denied due process of law because the indictment failed to specify the required mens rea for the crimes of rape and sexual battery. Specifically, he argues that each count required a stated mens rea for engaging in "sexual conduct." This court, however, rejected the identical argument Jones raises in *State v. Jackson*, 8th Dist. No. 92531, 2010-Ohio-3080, ¶ 36-38, as follows:

> First, * * * [Jackson] never raised this argument below * * *. We accordingly review this argument under a plain error analysis. See *State v. Colon*, 119 Ohio St. 3d 204, 2008-Ohio-3749, 893 N.E.2d 169, ¶ 7.
>
> * * * Regarding the rape count, this court has recently addressed the exact argument raised by Jackson and rejected it. See *State v. Rodriquez*, 8th Dist. No. 92231, 2009-Ohio-6101. In *Rodriquez*, we recognized that the requisite mens rea for rape is "purposely" and that the use of the statutory language in the indictment adequately apprises the defendant of the culpable mental state. *Id.* at ¶ 28. See, also, *State v. Ralston*, 9th Dist. No. 08CA009384, 2008-Ohio-6347; *State v. Solether*, 6th Dist. No. WD-07-053, 2008-Ohio-4738; *Starcher v. Eberlin*, 7th Dist. No. 08BE19, 2008-Ohio-5042 (recognizing that the indictments for rape, which mirrored the language of R.C. 2907.02(A), were not defective; the mens rea included in the statutory language, namely, "purposely," applies to the conduct and the result).

*Accord State v. Notestine*, 6th Dist. No. OT-08-038, 2009-Ohio-3220, ¶ 53 ("a particular mental state is not required for engaging in the acts that constitute 'sexual conduct'

pursuant to R.C. 2907.02(A)(1)"), citing *State v. O'Dell*, 2d Dist. No. 22691, 2009-Ohio-1040.

**{¶38}** Accordingly, Jones's indictment was not defective for failing to specify a mens rea for engaging in "sexual conduct" as to the two counts of rape under R.C. 2907.02(A)(2) and R.C. 2907.02(A)(1)(c).

**{¶39}** Jones additionally argues that the indictment was defective as to the two counts of sexual battery under R.C. 2907.03(A)(2) and (3) because they, too, contained no mens rea as to engaging in "sexual conduct." This court previously has recognized that no mens rea is necessary as to this element of the offense; it is a strict liability element. *State v. Fortson*, 8th Dist. No. 92337, 2010-Ohio-2337, ¶ 13, citing *State v. Singleton*, 11th Dist. No. 2002-L-077, 2004-Ohio-1517, ¶ 56.

**{¶40}** R.C. 2907.03(A)(2) and (3) do not require the state to prove the offender's mental state for engaging in sexual conduct. Rather, they require the offender to engage in the sexual conduct "knowing" that the victim's mental or physical incapacity prevents her from controlling or being aware of the activity. Counts 3 and 4 of Jones's indictment mirrored the statutory language of R.C. 2907.03(A). An indictment is not defective as long as it "parrots" the statute. *Fortson*, ¶ 14.

**{¶41}** Based upon this analysis, this court finds no error, plain or otherwise. Jones's fourth assignment of error is overruled.

{¶42} In his fifth assignment of error, Jones complains that his retained counsel provided such ineffective assistance that it deprived him of his constitutional rights. The relevant standard of review of such a claim recently was set forth in *State v. Moore*, 11th Dist. No. 2011-G-3027, 2012-Ohio-3885, ¶ 69-70, as follows:

> In order to prevail on an ineffective assistance of counsel claim, appellant must demonstrate that trial counsel's performance fell below an objective standard of reasonable representation, and there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus, adopting the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If a claim can be disposed of by showing a lack of sufficient prejudice, there is no need to consider the first prong, i.e., whether trial counsel's performance was deficient. *Id.* at 142, citing *Strickland* at 695-696. There is a general presumption that trial counsel's conduct is within the broad range of professional assistance. *Id.* at 142-143.

> Furthermore, decisions on strategy and trial tactics are generally granted a wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze the trial counsel's legal tactics and maneuvers. *State v. Gau*, 11th Dist. No. 2005-A-0082, 2006-Ohio-6531, ¶35, citing *Strickland* at 689. Debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995-Ohio-171, 656 N.E.2d 643 (1995).

{¶43} Jones argues that his trial counsel fell below an objective standard of reasonable representation in the following particulars: advising Jones to waive a jury, advising Jones not to testify in his own behalf, failing to object to the reading of the victim's written statements, failing to object to testimony by other witnesses regarding

what the victim told them, and failing to object to opinion testimony. These arguments are baseless.

**{¶44}** Matters pertaining to discussions Jones had with his trial attorney are not properly raised in a direct appeal because they are not part of the record. *See, e.g., State v. Rowe*, 3d Dist. No. 13-10-14, 2011-Ohio-5739, ¶ 20-27; *State v. Vess*, 6th Dist. No. OT-10-038, 2011-Ohio-3118, ¶ 21.

**{¶45}** The remaining issues Jones raises with respect to his trial counsel's actions constitute matters of trial strategy. Jones's trial counsel elicited testimony that permitted examination about the victim's prior statements. Counsel likely determined that cross-examining the victim with her prior statements would impeach her direct testimony, and that the witnesses' opinion testimony constituted admissible evidence. Evid.R. 611(B), 613(B), and 701; *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶ 151 (courts owe deference to trial counsel's strategic determinations, even if they are questionable in hindsight).

**{¶46}** As the Ohio Supreme Court explained in *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 139-140, such tactical decisions do not give rise to a claim for ineffective assistance:

> "[F]ailure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel. To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness." *State v. Holloway* (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831. * * *

"[E]xperienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice." *Lundgren v. Mitchell* (C.A.6, 2006), 440 F.3d 754, 774. *Accord State v. Campbell* (1994), 69 Ohio St.3d 38, 52-53, 1994-Ohio-492, 630 N.E.2d 339.

{¶47} The record reveals no such failure by Jones's trial counsel. Jones has not demonstrated that his trial counsel's performance fell below objective standards of reasonable representation or that he was prejudiced as a result.

{¶48} Therefore, Jones's fifth assignment of error is overruled.

{¶49} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentences.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

JAMES J. SWEENEY, P.J., and
SEAN C. GALLAGHER, J., CONCUR