[Cite as *State v. Brewer*, 2012-Ohio-2097.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                           :

    Plaintiff-Appellee                  :               C.A. CASE NO.    24126

v.                                      :               T.C. NO.    10 CR 685

ASTER BREWER, III                       :               (Criminal appeal from
                                             Common Pleas Court)

    Defendant-Appellant                 :

                                        :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    11th    day of    May   , 2012.

. . . . . . . . . .

JOHNNA M. SHIA, Atty. Reg. No. 0067685, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. No. 0072135, 36 N. Detroit Street, Suite 102, Xenia, Ohio 45385
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    This matter is before the Court on the Notice of Appeal of Aster Brewer, III,

filed June 30, 2010. Brewer appeals from his conviction and sentence on one count of aggravated burglary (physical harm), in violation of R.C. 2911.11(A)(1), a felony of the first degree; one count of aggravated burglary (deadly weapon), in violation of R.C. 2911.11(A)(2), also a felony of the first degree, along with a firearm specification; and one count of having weapons while under disability, in violation of R.C. 2923.13(A)(2). The underlying offense supporting the burglary charges is aggravated menacing. After a jury trial, Brewer was found guilty of the above offenses and sentenced to an aggregate prison term of ten years.

{¶ 2} Appellate counsel for Brewer filed his appeal pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1976). According to Brewer's counsel, after reviewing the entire record, he could find no arguable issues for appeal. He then set forth five potential assignments of error for our review. This Court then notified Brewer of his counsel's representation and offered him ample time to file a pro se brief. In his brief, Brewer reiterated the potential assignments of error set forth by his appellate counsel, and he also identified additional potential assignments of error. After thoroughly reviewing the entire record, this Court found arguable merit to Brewer's claim of ineffective assistance of counsel, in light of the failure of his trial counsel to request a mistrial after a potential juror, who was a former police officer, stated in the course of voir dire that he believed that he had previously arrested Brewer. This Court also found arguable merit to Brewer's contention that the State failed to adduce evidence that the firearm purportedly used by him in the commission of the offenses was operable. This court accordingly set aside the *Anders* brief and appointed new counsel to represent Brewer.

{¶ 3}     The events giving rise to this matter began on January 18, 2010, when Brewer and his brother, Carlos Brewer,  forced their way into the residence of Stephanie Keen, at 109 Vandergrift Drive, in Riverside.   Keen testified that at the time of the offense, she had just returned home with her two children, a two-year old boy and a four-year old girl.   She testified that after putting her son down for a nap, she and her daughter began watching television.   Keen stated that she then heard a loud banging on the front door of the residence.

{¶ 4}     Keen stated that she yelled, "Stop banging on my door, my son is asleep." As she began to open the door, Keen testified that the Brewers, whom she had never seen before, forced the door open and pushed their way inside.   According to Keen,  there were two other men with the Brewers, and one "was standing on my sidewalk and another was standing in front of my car."   Keen testified that Aster brandished a pistol and repeatedly yelled, "Where's Markie?"   Keen testified that Aster "continued to say where's Markie; he's not going to keep doing this to my family; if he wants trouble, we'll bring it back to his family; Carlos and Aster Brewer is coming for his ass."   Keen stated that Aster pulled a gun from the pocket of his "sweatshirt/jacket."   According to her testimony, the gun was silver, it fit in his hand, and as "he held it, he had one hand at the trigger area."   Keen testified that the gun "didn't seem to look like it had a revolver type to it."   Keen stated that it did not look like a toy or a BB gun, and that there was no question in her mind that it was a real gun.

  According to Keen, she "started crying as soon as he pulled it out * * *.   All I could think is my daughter was right there and saw the whole thing."   She stated that Aster did not point the gun directly at her.   She further stated that the gun was out of Aster's pocket for a

minute and half.

{¶ 5}   According to Keen, "Markie"  is Mark Hunter, the father of her children. Keen stated that she told the men that Markie was not at the residence, and that he did not live there.  She stated that Aster pounded on the front door with his fist before he and his brother left the residence.   Thereafter, Keen called 911.

{¶ 6}   Officer Steven Perfetti of the Riverside Police Department testified that he was dispatched to Keen's residence on the date of the incident, and that when he arrived, Keen "appeared to be scared, shaken up, crying," and that she provided Aster's and Carlos' names to him.  Perfetti stated that he relayed the information to other officers.  Officer Michael Sullivan of the Riverside Police Department testified that he also responded to Keen's residence, and that, after getting a written statement from Keen, he provided two photo spreads for her review the following day.  Sullivan stated that Keen identified Aster in one of the photo spreads.

{¶ 7}   Wesley Noble, Aster's cousin, Danielle York, Aster's girlfriend, and Angie Brewer, Carlos' wife, testified that they and another man were with Aster and Carlos when they went to Keen's residence.  They asserted in testimony that Aster did not have a gun in his possession at the time, and that after knocking on Keen's door and learning that   Markie was not there, the brothers returned to the car and departed without incident.

{¶ 8}   Aster was indicted for the above offenses on April 6, 2010, and he and his brother were tried together.

{¶ 9}   Brewer asserts three assignments of error.  His first assignment of error is as follows:

BREWER'S TRIAL COUNSEL WAS INEFFECTIVE BECAUSE HE FAILED TO REQUEST A MISTRIAL OR A CURATIVE INSTRUCTION AFTER A POTENTIAL JUROR STATED, IN FRONT OF THE ENTIRE JURY POOL, THAT HE HAD PREVIOUSLY ARRESTED APPELLANT.

**{¶ 10}** As this Court has previously noted:

We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, * * *. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. (Internal citation omitted). *State v. Mitchell*, 2d Dist. No. 21957, 2008-Ohio-493, ¶ 31.

{¶ 11}    During voir dire, David Miles, counsel for Aster, was introduced to the potential jurors by the trial court, and Miles then introduced Aster.   The following exchange occurred:

THE COURT: Does anyone know Mr.  Miles? * * * I see a hand back there.   He's been a local attorney for a number of years.

Sir, your name?

PROSPECTIVE JUROR * * * : [Mr.  C.].

THE COURT: And Mr. [C.] how do you know David?

PROSPECTIVE JUROR * * *: I'm a retired police officer and I think I know him, the Court (sic), and I believe I arrested Mr.  Brewer - -

THE COURT: All right.

PROSPECTIVE JUROR * * *:    - - in the past.

THE COURT: All right.   So you know both?

PROSPECTIVE JUROR * * * : Right.

THE COURT: All right.   Thank you for that, and if you happened to get to * * * the front during this jury selection process, we will further discuss that matter. * * *

Counsel for Aster did not move for a mistrial nor did he request a cautionary instruction be given to the venire.

{¶ 12}   Later in voir dire, the court addressed this juror at sidebar as follows:

THE COURT: * * * Obviously, what I'm concerned about is you perhaps arrested - - beyond the fact that you're a police officer which has its

own concerns, as you understand - -

PROSPECTIVE JUROR * * * : Right.

THE COURT:   - - but that may be something that can be overcome.

I am concerned, more particularly, about the fact that you perhaps arrested Aster Brewer III or some relative and what impact that may have.

* * *

PROSPECTIVE JUROR * * *: Well, I heard him talking.   He goes I think he arrested me in Sugarcreek.   So I think he knows who I am too.

THE COURT: Yes.   I mean I think you can understand how that could be a problem.

* * *

THE COURT: * * * So I'm going to let you go home, I think.

The prospective juror was then dismissed

{¶ 13}     In the course of the trial, the prosecutor read the following stipulation into the record: "In the case of State of Ohio vs. Aster Brewer III, Case No.  2010-CR-685, the parties have stipulated that the defendant, Aster Brewer III, has previously been convicted of aggravated burglary, an offense of violence, in Case No.  1993-CR-516, in Montgomery County, Ohio Court of Common Please, on June 7th, 1993," and that "the defendant named in the case before the Court is the same defendant named in that prior case, 1993-CR-516."

{¶ 14}   At the close of trial, the court instructed the jury in part that "[e]vidence is all the testimony received from the witnesses and also any exhibits admitted during the course of the trial.  Also, in this case, it includes the stipulation which is also a piece of

evidence for you to consider. That's also part of the evidence in this particular case."

{¶ 15} Defense counsel's failure to request a mistrial or curative instruction regarding the prospective juror's remark that he had previously arrested Aster was deficient. Nevertheless, we cannot conclude that the error was serious enough to create a reasonable probability that, in the absence of the error, the result of the trial would have been different. Aster in fact stipulated to a prior conviction for a felony offense of violence at trial. In other words, the jury received direct evidence of a prior conviction in the form of the stipulation, thus we cannot find that Aster was prejudiced by the prospective juror's comment such that he did not receive a fair trial.

{¶ 16} Since ineffective assistance is not demonstrated, Aster's first assigned error is overruled.

{¶ 17} We will consider Aster's second and third assigned errors together. They are as follows:

BREWER'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SPECIFICALLY HIS HAVING WEAPONS UNDER DISABILITY CONVICTION AND FIREARM SPECIFICATION CONVICTION WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE STATE FAILED TO PROVE THE FIREARM WAS OPERABLE.

And,

BREWER'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND SPECIFICALLY HIS HAVING

WEAPONS UNDER DISABILITY CONVICTION AND FIREARM SPECIFICATION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE BECAUSE THE STATE FAILED TO ELICIT SUFFICIENT EVIDENCE REGARDING THE FIREARM'S OPERABILITY.

{¶ 18}    As this Court has previously noted, in a weight of the evidence challenge, an appellate court:

"[R]eview[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *State v.  Thompkins* (1997), 78 Ohio St.3d 380, 387, quoting *State v.  Martin* (1983), 20 Ohio App.3d 172, 175.  While *Thompkins* explicitly permits this court to consider credibility when confronted with an argument that the verdict is against the manifest weight of the evidence, such consideration is not unbounded.  We have explained the limited role of an appellate court in reviewing issues of credibility in weight of the evidence challenges as follows:

"Because the factfinder, be it the jury or * * * trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the

manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness. Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion. Therefore, although this distinction is not set forth in *Thompkins*, *supra*, we conclude that a decision by a factfinder as to which testimony to credit, and to what extent, is a decision that is entitled to greater deference than the decision as to how much logical force to assign an inference suggested by that evidence - in short, how persuasive it is. *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288, unreported." *State v. Pierre,* 2d Dist. Montgomery No. 18443,

2001

WL        220239

(March 2, 2001).

**{¶ 19}**  As the Ohio Supreme Court has further previously noted:

In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; see, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. *State v. McKnight*, 107 Ohio St.3d 101, 112, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 70.

**{¶ 20}**  R.C. 2923.13 proscribes having weapons while under disability and provides:

(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

* * *

(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the

commission of an offense that, if committed by an adult, would have been a felony offense of violence.

{¶ 21}   Pursuant to R.C. 2941.145(A), a defendant may have an additional three year prison term added to his sentence if the jury finds a specification, previously stated in the indictment, "that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated the offender possessed the firearm, or used it to facilitate the offense."

{¶ 22}   R.C. 2923.11(B) defines firearm and provides:

(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant.  "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representation and actions of the individual exercising control over the firearm.

{¶ 23}   In *State v. Thompkins*, paragraph one of the syllabus, the Supreme Court of Ohio held that:

A firearm specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of

being readily operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm.

{¶ 24}  Thompkins committed a robbery using a gun, and while he did not expressly threaten to use the weapon, the victim therein testified that:

> * * * Thompkins, during the course of the robbery, had in his hand a black gun that appeared to [the victim], to be an automatic; that she was frightened; that Thompkins advised her that it was a "holdup"; that while she was taking the money from the cash register, Thompkins said "quick, quick"; that prior to fleeing the scene, Thompkins instructed her not to call the police for ten minutes * * *.  *Thomkins*, at 382.

{¶ 25}  As this Court has previously noted:

> The Ohio Supreme Court held that "[e]ven absent any explicit verbal threats on the part of Thompkins, the trier of fact in this case could have reasonably concluded, based on the totality of the circumstances, that Thompkins was in possession of a firearm at the time of the offense, that is, a deadly weapon capable of expelling projectiles by an explosive or combustible propellant."  *Id.*  at 383 * * *.  "[I]t should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable."  Id.  at 384 * * * .

*State v. Gamble,* 2d Dist. Clark No. 2001 CA 61, 2002-Ohio-3289.

**{¶ 26}** Having thoroughly reviewed the entire record, and weighed all reasonable inferences, we cannot conclude that the evidence weighs heavily against Aster's convictions for having weapons while under disability, along with the firearm enhancement specification to aggravated burglary (deadly weapon), and we further conclude, after viewing the evidence in a light most favorable to the State, that any rational juror could have found the elements of having weapons while under disability and the firearm enhancement specification established beyond a reasonable doubt. Under the circumstances of this case, the jury could infer from Aster's actions, as in *Thompkins*, that the weapon he brandished was operable. He brandished the weapon with his hand "at the trigger area," he yelled in a threatening manner, and by his conduct, he implicitly threatened to discharge the weapon. This is evidenced by these words: "Where's Markie; he's not going to keep doing this to my family; if he wants trouble, we'll bring it back to his family; Carlos and Aster Brewer is coming for his ass." Keen understood the weapon to be real, and she was crying and frightened for her daughter and herself. While the defense witnesses testified that they did not observe Aster with a weapon, the jury clearly believed Keen, and we defer to the factfinder's assessment of credibility.

**{¶ 27}** Since Aster's conviction for having weapons while under disability and the firearm specification are not against the manifest weight of the evidence and are supported by sufficient evidence, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and FROELICH, J., concur.

Copies mailed to:

Johnna M. Shia
Jay A. Adams
Hon. Michael L. Tucker