[Cite as *State v. Keller*, 2018-Ohio-4107.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 106196

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DONALD M. KELLER

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-612751-A

**BEFORE:** Keough, J., Kilbane, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** October 11, 2018

[Cite as *State v. Keller*, 2018-Ohio-4107.]
**ATTORNEY FOR APPELLANT**

Myriam A. Miranda
P.O. Box 40222
Bay Village, Ohio 44140


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Jennifer King
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Donald Keller, appeals his convictions for rape. Finding no merit to the appeal, we affirm.

{¶2} In October 2016, Keller was named in a single-count indictment charging him with rape, in violation of R.C. 2907.02(A)(1)(c). The matter proceeded to a jury trial where the following evidence was presented.

{¶3} In the late night of October 18, 2016, the victim, age 23, met up with her boyfriend, Kyle, and his coworkers, Trish and Keller, age 52, after they got off work. The group went to Winking Lizard in Mayfield Heights to have a drink. The victim testified that because it was almost closing time, she ordered two Jameson cocktails; everyone else had at least one drink. After consuming their drinks, the group members each drove separately to Cork-N-Bottle in Mayfield Heights. It was approximately 12:30 a.m. on October 19 when they arrived. They proceeded to order more cocktails, drink some shots of liquor, and share a pizza. The victim testified that between the two establishments, she consumed a total of seven drinks, including shots. Trish used her cell phone to video record the group's interactions and conversations throughout the night at the bar.

{¶4} The group stayed at Cork-N-Bottle until it closed, and then decided they would continue the party at Trish's house in Seven Hills. It was decided that Keller would drive the victim, and Kyle, the most intoxicated of the group, drove Trish in her car.

{¶5} Once they arrived at Trish's house, the group each poured themselves a glass of vodka. The victim testified that she did not finish her drink because it was straight vodka. The group also smoked some marijuana. Again, Trish used her cell phone to video record the group's conversations while at her house.

{¶6} As the morning hours approached, the party started winding down. Kyle was lying on one couch, perpendicular to another larger couch where the victim and Keller were both seated. Although Trish offered for them to sleep in spare bedrooms, each declined stating that "it was late," and they "were too comfortable to move." The victim testified that she just wanted to pass out and did not find it uncomfortable that Keller was on the opposite end of the couch. Eventually everyone passed out around 6:00 a.m.

{¶7} The victim testified that she remembered waking up to Keller picking her up off the floor and placing her back on the couch. She further testified that she remembered him digitally penetrating her and she tried to kick him away. The victim stated that she passed back out and woke up to the alarm she had set earlier when riding in the car with Keller.

{¶8} When she awoke, she saw that Keller and Kyle were still sleeping on the couches. She noticed that both of her legs were inside one pant leg of her skort (a skirt with shorts attached underneath), which was not how she was wearing it when she passed out. She went into the bathroom and noticed that the crotch to the stockings she was wearing was ripped. The victim testified that when she felt sore in her vaginal area and it was painful urinating, she knew something was wrong.

{¶9} When she walked back to the living room, she noticed that Keller had left. She found this peculiar because he was sleeping when she went to the bathroom and was supposed to drive her and Kyle back to their cars at Cork and Bottle. At that moment, she believed Keller might have taken advantage of her. The victim woke Kyle to get their cars because she had to work.

{¶10} Kyle testified that he noticed that the victim was disheveled and appeared as if she had been crying. After questioning her, the victim finally told him that she thought Keller "did something" to her. They woke Trish and asked her to give them a ride to their cars. During the car ride, the victim burst into tears and told Trish that Keller may have taken advantage of her. Trish contacted the Rape Crisis Center, and based on the information received, Trish drove to Hillcrest Hospital.

{¶11} Debra Casey, a sexual assault nurse examiner (SANE nurse) testified that she began examining the victim around 12:38 p.m. on October 19, 2016. Casey testified that she noticed new bruising on the victim's arms and abrasions on her upper-mid back. She noted tenderness to the victim's hip and vaginal area, with abrasions and swelling to the victim's genitalia. Casey testified that a sexual assault examination was performed and a rape kit was assembled, which included the victim's underwear and swabs taken from the victim's body.

{¶12} Christine Hammett, a forensic scientist with the bureau of criminal investigation ("BCI"), testified that she examined the swabs from the rape kit and discovered semen on the swabs. Kylie Graham, a forensic scientist with BCI, testified

that she tested both the vaginal swabbing and the victim's underwear for DNA. During her first testing of the swabs and clothing, she found the presence of the victim's DNA and an unknown male contributor — Kyle was excluded. After Keller submitted a sample for DNA testing, Graham performed DNA testing again and found, to a reasonable degree of medical certainty, that Keller was a contributor to the sample taken from the swabs, and a major contributor to the sample from the victim's underwear and labia.

{¶13} Dr. Harold Schueler, chief toxicologist of the Cuyahoga County Medical Examiner office, testified that he tested the victim's blood and urine. Dr. Schueler stated that the victim's blood sample, which was taken around 10:38 a.m. on October 19, 2016, had a blood-alcohol content of .04 grams per deciliter. He stated that alcohol metabolizes at about .02 grams per deciliter every hour. In comparison, he stated that .08 grams per deciliter is the legal limit for driving under the influence of alcohol. Dr. Schueler also testified that the victim tested positive for THC, a marijuana metabolite.

{¶14} Keller was arrested in December 2016. He testified in his defense. He stated that he was "pretty intoxicated" during the evening and early morning hours of October 19, 2016. He admitted that the victim was also "pretty drunk." He admitted that there were no flirtatious signs given by the victim during the course of the evening, he knew the victim and Kyle were in a relationship, and he was dating a coworker. Nevertheless, he stated that when he was awakened by the victim massaging his surprisingly exposed penis, he was "shocked," but engaged in sexual conduct with her.

According to Keller, he did not remember helping the victim get undressed, but she was naked from the waist down. Despite testifying that he did not "remember much," he recalled that moments between them were "heated," no words were spoken between them, he believed he saw Kyle move on the couch, and he ejaculated. He stated that he did not intend for "it" to happen, but "it felt good," and it was "not a bad thing at the time — so I did it." (Tr. 632.)

{¶15} Keller testified that he passed out afterward and awoke around 9:00 a.m. He stated that on his way to the bathroom, he had to step over the victim, who was asleep on the floor. He testified that he felt embarrassed by the situation, and just wanted to "get the hell out of there." (Tr. 637.) He further testified that he had an appointment out of town and needed to leave; he did not remember promising the victim and Kyle a ride back to their cars. Keller denied raping the victim, maintaining that they had consensual sex.

{¶16} The jury found Keller guilty of rape, and the court sentenced him to six years in prison. He was also classified as a Tier III sex offender.

{¶17} Keller now appeals, raising five assignments of error, which will be addressed out of order.

### I. Sufficiency of the Evidence

{¶18} In his first assignment of error, Keller contends that the trial court erred in denying his Crim.R. 29 motion for judgment of acquittal because his conviction is not supported by sufficient evidence.

**{¶19}** A Crim.R. 29 motion challenges the sufficiency of the evidence. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-829, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus

**{¶20}** Keller was charged with rape, in violation of R.C. 2907.02(A)(1)(c), which prohibits one from engaging in sexual conduct with another who is not his spouse, and the ability of the victim to resist or consent was substantially impaired because of a mental or physical condition, and where the individuals knew or had reasonable cause to believe that the victim's ability to resist or consent was substantially impaired because of a mental or physical condition.

**{¶21}** "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Whether a person acted "knowingly" is inferred from the totality of

the circumstances surrounding the alleged offense. *State v. Booth*, 133 Ohio App.3d 555, 562, 729 N.E.2d 406 (10th Dist.1999).

**{¶22}** Keller contends on appeal that the state provided insufficient evidence that the victim was "substantially impaired," and that he knew, or had reasonable cause to believe that the victim was substantially impaired and unable to consent before engaging in sexual conduct. Specifically, Keller contends that the state did not provide sufficient evidence of substantial impairment because the victim did not show any outward signs of impairment to alert him of her inability to resist or consent.

**{¶23}** The Ohio Supreme Court has observed that "[t]he phrase 'substantially impaired,' in that it is not defined in the Ohio Criminal Code, must be given the meaning generally understood in common usage." *State v. Zeh*, 31 Ohio St.3d 99, 103, 509 N.E.2d 414 (1987). "[S]ubstantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct." *Id*. at 103-104.

**{¶24}** This court has found that voluntary intoxication is a mental or physical condition that could cause substantial impairment. *State v. Jones*, 8th Dist. Cuyahoga No. 101311, 2015-Ohio-1818, ¶ 43, citing *State v. Doss*, 8th Dist. Cuyahoga No. 88443, 2008-Ohio-449, ¶ 13; *In re King*, 8th Dist. Cuyahoga Nos. 79830 and 79755, 2002-Ohio-2313, ¶ 22. Keller contends, however, that "intoxication" is not synonymous with "substantial impairment." *See Doss* at ¶ 18. This is true. Accordingly, sexual conduct with an intoxicated person under Ohio law "becomes criminal when the victim's

'ability to resist or consent is substantially impaired by reasons of voluntary intoxication.'" *Jones* at *id.*, quoting *King* at *id.*, citing *State v. Martin*, 12th Dist. Brown No. CA99-09-026, 2000 Ohio App. LEXIS 3649 (Aug. 14, 2000). Substantial impairment can be demonstrated by the testimony of those who have interacted with the victim. *Jones* at *id.*, citing *State v. Brady*, 8th Dist. Cuyahoga No. 87854, 2007-Ohio-1453, ¶ 78.

{¶25} Moreover, this court has held that sleep constitutes a mental or physical condition that substantially impairs a person from resisting or consenting to sexual conduct. *State v. McCall*, 8th Dist. Cuyahoga No. 104479, 2017-Ohio-296, ¶ 6, citing *State v. Jones*, 8th Dist. Cuyahoga No. 98151, 2012-Ohio-5737, ¶ 30, citing *State v. Clark*, 8th Dist. Cuyahoga No. 90148, 2008-Ohio-3358, ¶ 21 (when a person is asleep, he or she is not in a mental condition to resist or consent to the sexual conduct).

{¶26} In this case, the victim testified that she was "pretty intoxicated" in the early morning hours prior to the rape. She testified that she consumed a total of seven liquor-based alcoholic beverages prior to going to Trish's house. After arriving at her friend's house, she poured herself a glass of vodka, which she sipped (but did not finish) throughout the night. She stated that the group also smoked two bowls of marijuana. The victim stated that around 6:00 a.m. she curled up on the couch, struggling to keep her eyes open. And although her friend offered her and her boyfriend a guest room, she declined because it was late, she was comfortable, and "just like ready to pass out." According to the victim, she is typically a hard sleeper, but especially so if she has been

drinking. Therefore, as Keller drove her to Trish's house, she set her alarm "in case I would forget and pass out when I got there." The victim testified that she does not really exhibit any indicia of intoxication, such as vomiting, slurring her words, difficulty in walking, or falling down.

{¶27} Trish testified that the victim was intoxicated when they left Cork-N-Bottle. She stated that she had been out with the victim on previous occasions when the victim had been drinking. According to Trish, the victim becomes more social and talkative after she has been drinking. Kyle, the victim's boyfriend, also testified that the victim becomes more talkative and her voice gets louder when she has been drinking; he believed that the victim was intoxicated.

{¶28} Keller also testified that he knew that the victim had consumed at least five drinks and smoked marijuana. He further testified that "as far as [he] could tell" the victim was intoxicated — no more, no less than anybody else" except Kyle. (Tr. 653.) Keller admitted that there was no flirtation between the two that evening or any other previous time they hung out that would indicate she was sexually interested in him, but yet, according to Keller, she initiated sexual activity. By Keller's account, the victim actually sexually assaulted him. Nevertheless, he took advantage of the situation and "let it happen." (Tr. 654.)

{¶29} Keller cites this court's decision in *State v. Schmidt*, 8th Dist. Cuyahoga No. 88772, 2007-Ohio-4439, to support his argument that the evidence was insufficient to prove that the victim was "substantially impaired." Keller's reliance is misplaced. In

*Schmidt*, this court reversed the defendant's rape conviction because insufficient evidence was presented to prove that the victim was substantially impaired. The victim in that case testified that although she consumed many alcoholic beverages, she remembered the evening, including consenting to other sexual acts with the defendant, but not intercourse. In this case, unlike in *Schmidt*, the victim testified that she remembered the entirety of the evening prior to passing out; however, she did not consent to *any* sexual contact or conduct with the defendant. Instead, the victim awoke to Keller digitally penetrating her and then discovered that he had had sexual intercourse with her.

{¶30} Accordingly, sufficient evidence was presented for a reasonable jury to conclude that the victim's ability to resist or consent to sexual conduct was substantially impaired by (1) being asleep and (2) voluntary intoxication from both alcohol and marijuana.

{¶31} Alternatively, Keller contends that even if sufficient evidence was presented that the victim was "substantially impaired," insufficient evidence was presented that would apprise him of such impairment. Whether an offender knew or had reasonable cause to believe the victim was impaired may be reasonably inferred from a combination of the victim's demeanor and others' interactions with the victim. *Jones*, 8th Dist. Cuyahoga No. 101311, 2015-Ohio-1818, at ¶ 43, citing *State v. Novak*, 11th Dist. Lake No. 2003-L-077, 2005-Ohio-563, ¶ 25. Evidence that should have alerted an offender to whether a victim was substantially impaired may include evidence that the victim was stumbling, falling, slurring speech, passing out, or vomiting. *King*, 8th Dist. Cuyahoga

Nos. 79830 and 79755, 2002-Ohio-2313, at ¶ 20; *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, ¶ 50 (2d Dist.).

{¶32} In support, Keller cites this court's decision in *Doss*, 8th Dist. Cuyahoga No. 88443, 2008-Ohio-449, and the Second District's decision in *Hatten*. In each of these cases, the appellate court reversed the rape conviction, finding that insufficient evidence was presented to prove that the defendant knew or had a reasonable belief that the victim was substantially impaired. However, each of these cases are factually distinguishable.

{¶33} In *Doss*, this court, on reconsideration, reversed a rape conviction for insufficient evidence that the defendant knew that the victim was substantially impaired. In that case, this court found that although the evidence and testimony suggested the victim may have been substantially impaired, the evidence was insufficient to prove that the defendant had knowledge of substantial impairment, as opposed to mere intoxication. *Id*. at ¶ 20. This court concluded that the victim's inability to recall the incident was not evidence of nonconsensual sexual activity or that the defendant knew she may have been substantially impaired. *Id*. at ¶ 21. Rather, this court based its decision on the fact that no evidence was presented refuting the defendant's account that the sexual conduct was consensual. *Id*. at ¶ 23-25. The defendant gave a detailed account of the consensual nature of the activity, including that the victim was hugging him prior to any sexual activity, she voluntarily went to the living room with him, and the victim's actions during the encounter led the defendant to believe the victim was not substantially impaired. *Id*.

{¶34} In this case, unlike in *Doss*, there was no indication prior to the sexual conduct that would have led Keller to believe that the victim was consenting to sexual activity. Moreover, the victim in *Doss* did not have any recollection of the sexual encounter, whereas the victim in this case testified that she fell asleep and awoke to Keller digitally penetrating her, and picking her up off the floor and putting her back on the couch. She recalled that she was kicking Keller away as this was occurring. The victim stated that she had no recollection of Keller engaging in sexual intercourse with her, but the evidence unequivocally proves that sexual conduct occurred. Additionally, the victim's stockings were ripped in the crotch area and when she awoke, she found both of her legs in one pant-leg of her skort.

{¶35} In *Hatten*, the Second District found insufficient evidence to prove that the defendant knew that the victim was substantially impaired because no evidence was presented that the defendant knew the amount of alcohol consumed by the victim prior to arriving at the defendant's home. *Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632. Additionally, no evidence was offered about the victim's behavior or outward signs of intoxication that would have alerted the defendant to the victim's level of intoxication.

{¶36} In this case, unlike in *Hatten*, Keller was present during the entire evening while the victim consumed alcohol and smoked marijuana. Additionally, Keller drove the victim to their friend's house following the night of bar-hopping. He knew that she under the influence to the point where she should not operate her vehicle, and he

witnessed her slip off a railing at one of the establishments. Once they arrived at their friend's house, he was aware that she was drinking a glass of straight vodka and that she smoked at least two bowls of marijuana with the group. Although the victim was not stumbling, slurring her words, or vomiting, Keller had reasonable cause to believe that the victim's ability to resist or consent was substantially impaired due to her alcohol and drug consumption. Moreover, Keller was well aware that the victim was sleeping and, in fact, stated he was "shocked" to wake up and find the victim fondling him.

**{¶37}** Viewing the evidence in the light most favorable to the state, sufficient evidence was presented for a rational jury to conclude that Keller knew or had reasonable cause to believe that the victim was substantially impaired to resist or consent to sexual conduct.

**{¶38}** Keller's first assignment of error is overruled.

## II. Manifest Weight of the Evidence

**{¶39}** In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). A conviction

should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶40} In his fifth assignment of error, Keller contends that his conviction is against the manifest weight of the evidence. Rather than explain why his convictions are against the manifest weight of the evidence, Keller summarily "incorporates the factual assertions and arguments found in Assignment of Error I." Keller's mere incorporation fails to satisfy the requirement in App.R. 16(A)(7) "that the appellant present an 'argument with respect to each assignment of error presented for review[.]'" *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 2, quoting *State v. Sparent*, 8th Dist. Cuyahoga No. 96710, 2012-Ohio-586, ¶ 11. Accordingly, Keller's assignment of error is summarily overruled.

### III. Admission of Evidence

{¶41} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus. We, therefore, will not disturb the trial court's judgment absent an abuse of discretion.

{¶42} Relevant evidence is admissible unless prohibited by an evidentiary rule, statute, or constitutional provision. Evid.R. 402. Evid.R. 403(A) provides that relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Although most evidence presented by the state is prejudicial, not all evidence is unfairly prejudicial.

*State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 107. The court must balance the prejudicial effect of evidence against its probative value.

{¶43} Pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." To find an error harmless, a reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt. *State v. Lytle*, 48 Ohio St.2d 391, 403, 358 N.E.2d 623 (1976). A reviewing court may overlook an error where the remaining admissible evidence, standing alone, constitutes "overwhelming" proof of a defendant's guilt. *State v. Williams*, 6 Ohio St.3d 281, 290, 452 N.E.2d 1323 (1983). Where "there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." *State v. Brown*, 65 Ohio St.3d 483, 485, 605 N.E.2d 46 (1992); Civ.R. 52(A).

{¶44} Keller contends in his second assignment of error that the trial court erred when it allowed the jury to hear highly prejudicial and irrelevant evidence. Specifically, he contends that the trial court erred in allowing the state to present and elicit testimony regarding (1) Keller's concerns of being accused of molesting his girlfriend's daughters, (2) Keller's membership in a motorcycle gang; (3) forcible rape when he was not indicted under that section of the statute; and (4) the use of his age as an indication of misconduct or inappropriateness when age is not an element of the offense. The challenged testimony must be reviewed in its relevant context.

**A. Fear of Being Accused**

{¶45} The victim was cross-examined with multiple cell phone videos taken by Trish over the course of the evening. Based on the context and line of questioning, the defense was presumably using these videos to show that the group was getting along and that the victim was not showing any signs of intoxication. According to the victim, during one of the videos, Keller was discussing how he treats women. On redirect, the state questioned the victim about that video and if Keller mentioned his girlfriend or her children. Defense counsel objected, and a side-bar discussion occurred. After hearing arguments from both sides about the line of questioning, the trial court overruled the objection, citing the testimony defense counsel elicited during cross-examination of the victim.

{¶46} The victim then testified that Keller talked about his girlfriend and how he was nervous when she would have laborers at her house. According to the victim, Keller stated that he never wanted to be left alone with his girlfriend's adolescent-aged daughters in fear of being accused of "[O]h, he touched me." (Tr. 300.) When questioned about her reaction to this comment, the victim stated that she did not think anything about it and felt that Keller was justified in thinking this way by not wanting to put himself in those situations. (Tr. at *id*.) On re-cross examination, the victim clarified that she never thought Keller acted inappropriately with his girlfriend's daughters. (Tr. at 308.)

{¶47} Trish testified on cross-examination about Keller's girlfriend and her daughters. According to Trish, Keller made a comment about his girlfriend's daughters

that made her "uncomfortable." Over objection, Trish stated that Keller "said, '[a]ll I need is for one of those little c***s to say that I touched them, and then I'm done for,' or something like that." (Tr. 344.) Trish testified that she subsequently told Keller's girlfriend that he made this statement.

{¶48} Kyle also testified about Keller's comments about his girlfriend's daughters. He stated that Keller was explaining how he tries "to avoid putting himself in situations to where — he seemed aware of like her word against his, I don't know, how dangerous — I don't know how — he seemed worried if he put himself in a situation where she might put her word against his, in any kind of manner." (Tr. 433.) According to Kyle, a sexual encounter was "somewhat, inferred." (Tr. 434.)

{¶49} On direct examination, Keller was questioned about the cell phone videos, specifically the video that captured his response about his opinion on women. Keller explained that he did not want to be around his girlfriend's daughters at all because they were not comfortable with the fact that their mother was dating someone other than their father. On cross-examination, the state then posed a series of questions to Keller that, when reviewing the nature of the questions, were more akin to the prosecutor testifying. No objection was raised, but Keller denied that he ever sexually assaulted his girlfriend's daughters and further denied making the derogatory statement that Trish stated he made.

{¶50} We find that the questioning about Keller's girlfriend's daughters was completely irrelevant. His interactions with his girlfriend's adolescent-aged daughters did not provide any probative value to the state's case against Keller. In fact, because

this case was essentially a credibility contest, the state risked its case on presenting testimony that was not necessary to prove its case against Keller. Under different circumstances, this tactic could be reversible error.

{¶51} However, the admission of the testimony was harmless in this case because the victim was not a minor, and sufficient, relevant evidence and testimony was presented that Keller engaged in sexual conduct with the victim who was substantially impaired either by voluntary intoxication or because she was asleep. Moreover, the jury was able to determine the credibility of both the victim and the defendant because both testified; it did not need to rely on other testimony to make this assessment. Accordingly, the error in allowing the testimony was harmless.


## B. Motorcycle Gang Affiliation

{¶52} On cross-examination of the victim, counsel played cell phone videos from Trish's phone that captured Keller talking about his life. In one of the videos, Keller was talking about "conforming to different situations." When questioned about this statement, the victim testified that Keller was talking about being a chameleon and conforming to groups — from serving in fine dining restaurants to biker gangs. (Tr. 273.) Trish also testified about the topics of conversation that the group talked about. In passing, she stated that Kyle asked about Keller's life — "like gang[-]related activity." (Tr. 349.) No further testimony was elicited about this statement. We find these isolated statements were not unfairly prejudicial. Moreover, Keller testified that when he

was asked about riding motorcycles and whether he was in a gang, he stated that he had "never been involved [with a gang]." (Tr. 617) Accordingly, the trial court did not commit prejudicial error in allowing this testimony.

## C. Forcible Rape

{¶53} To the surprise of both the state and the defense, the victim testified that she woke up to Keller digitally penetrating her vagina, and that she remembered kicking and pushing him away. Keller contends on appeal that the allowance of such testimony was highly prejudicial because he was not charged with forcible rape.

{¶54} A review of the record demonstrates that once the victim testified to this encounter, the parties discussed the appropriate remedial measure to ensure that Keller received a fair trial. After it was determined that a curative instruction would not be helpful, the trial court denied defense counsel's request to cross-examine the prosecutor regarding the late disclosure. No request for a mistrial was made. And because the state was unaware prior to trial that the victim would testify to this undisclosed sexual conduct, the state indicated at side-bar that it would not use the victim's testimony in an improper manner or to prove its case.

{¶55} Testimony was subsequently elicited from both the SANE nurse and the investigating detective that the victim never disclosed prior to trial that Keller digitally penetrated her. The contradictory testimony allowed the jury to determine the victim's credibility, which is a function of the trier of fact.

{¶56} Moreover, the state did not allude to the challenged testimony during its closing argument. However, after the defense reminded the jury that the victim's credibility was questionable due to the impeaching testimony, the state reiterated to the jury that the testimony of digital penetration was not necessary because Keller was not charged with the offense as a result of that conduct.

{¶57} Accordingly, based on the impeachment testimony presented by other witnesses for the state and the state's restraint in using the testimony for an improper purpose, we find no abuse of discretion in the trial court's management of this surprise testimony.

**D. Age**

{¶58} Keller contends that the state used his age as an indication of misconduct or inappropriateness even though age is not an element of the offense. Keller testified on direct examination that he was 52 years of age that evening. He testified that "he is older than his coworkers so people want to know his story and history." (Tr. 616.) Accordingly, any subsequent questions about his age were permissible and prejudicial error cannot be found because Keller voluntarily told the jury his age. The jury is entitled to weigh the evidence and make its own conclusions about the sincerity, motives, or actions of any of the witnesses, including the victim and defendant. Therefore, it was entitled to consider the ages of the parties in determining credibility.

{¶59} Keller's second assignment of error is overruled.

### IV. Jury Instruction — Flight

**{¶60}** In his fourth assignment of error, Keller contends the trial court erred by giving the jury a flight instruction.

**{¶61}** The giving of jury instructions is within the sound discretion of the trial court, and we review it for an abuse of discretion. *State v. Howard*, 8th Dist. Cuyahoga No. 100094, 2014-Ohio-2176, ¶ 35, citing *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (3d Dist.1993).

**{¶62}** In this case, the trial court gave the following instruction to the jury on flight:.

> Testimony has been admitted indicating that the defendant fled the scene. You are instructed that the fact that the defendant fled the scene does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness of guilt.
>
> If you find that the facts do not support that the defendant fled the scene or if you find that some other motive prompted the defendant's conduct or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose.
>
> However, if you find that the facts support that the defendant engaged in such conduct and if you decided that the defendant was motivated by a consciousness of guilt, you may but are not required to consider that evidence in deciding whether the defendant is guilty of the crimes charged. You alone will determine what weight, if any, to give this evidence.

(Tr. 724.)

**{¶63}** This court has consistently held that a flight instruction should not be given when a defendant merely departs from the scene of a crime, unless deliberate flight is proven, such that the defendant took affirmative steps to avoid detection and apprehension. *See, e.g., State v. Johnson*, 8th Dist. Cuyahoga No. 99715,

2014-Ohio-2628, ¶ 110. In fact, the Ohio Jury Instructions provides that when giving the instruction, the "flight" must be beyond simply not remaining at the scene of the crime — "that the defendant (fled the [scene] [describe jurisdiction]) (escaped from custody) (resisted arrest) (falsified his/her identity) (changed appearance) (intimidated a witness) (attempted to conceal a crime) (describe other conduct)." *Ohio Jury Instructions*, CR Section 409.13. These examples are all acts or deliberate conduct of avoiding detection, apprehension, or evading police. Nevertheless, trial courts are still instructing the jury on "consciousness of guilt" or "flight" when the evidence only shows mere departure from the scene.

{¶64} As in the cited cases, the trial court abused its discretion in giving the flight instruction because Keller leaving Trish's house in the early morning was not deliberate flight in the sense of evading police, detection, or apprehension. At no time did Keller flee to a location where he could not be located. Additionally, Keller continued working at the same location with the victim's boyfriend and friend until he was arrested.

{¶65} Despite the error, we cannot say, nor has Keller demonstrated, that the error was prejudicial. "A reviewing court may not reverse a conviction in a criminal case due to jury instructions unless it is clear that the jury instructions constituted prejudicial error." *State v. McKibbon*, 1st Dist. Hamilton No. C-010145, 2002-Ohio-2041, ¶ 4, citing *State v. Adams*, 62 Ohio St.2d 151, 154, 404 N.E.2d 144 (1980). In order to determine whether an erroneous jury instruction was prejudicial, a reviewing court must examine the jury instructions as a whole. *State v. Harry*, 12th Dist. Butler No.

CA2008-01-013, 2008-Ohio-6380, ¶ 36, citing *State v. Van Gundy*, 64 Ohio St.3d 230, 233-234, 1992 Ohio 108, 594 N.E.2d 604 (1992). "A jury instruction constitutes prejudicial error where it results in a manifest miscarriage of justice." *State v. Hancock*, 12th Dist. Warren No. CA2007-03-042, 2008-Ohio-5419, ¶ 13. Conversely, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A).

**{¶66}** The instruction given, although improper, allowed the jury to make its own conclusions regarding under what circumstances Keller left Trish's house. The jury considered the victim's explanation that Keller left the house after she awoke, even though he was supposed to take them back to their cars. The jury also heard Keller's explanation as to why he left, testimony that he continued going to work where the victim's boyfriend also worked, and that he never concealed himself following the rape. Thus, the instruction did not change the underlying facts of the case; the instruction was harmless beyond a reasonable doubt.

**{¶67}** Accordingly, Keller's fourth assignment of error is overruled.

## V. Effective Assistance of Counsel

**{¶68}** In his third assignment of error, Keller contends that he was denied effective assistance of counsel because counsel should have requested a mistrial when (1) the victim recalled and testified at trial about being digitally penetrated and fighting off Keller, and (2) testimony was given about Keller's fear of being accused of molesting children.

{¶69} To establish ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance fell below an objective standard of reasonable representation, and (2) he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. The failure to prove either prong of the *Strickland* two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland* at 697.

{¶70} Failure to request a mistrial or curative instruction may be deficient performance of trial counsel. *See State v. Brewer*, 2d Dist. Montgomery No. 24126, 2012-Ohio-2097, ¶ 15. An appellant alleging ineffective assistance of counsel because his attorney failed to move for a mistrial must establish that the trial court probably would have or should have declared a mistrial. *State v. Seiber*, 56 Ohio St.3d 4, 564 N.E.2d 408 (1990), citing *State v. Scott*, 26 Ohio St.3d 92, 95-96, 497 N.E.2d 55 (1986). A mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred. *State v. Jones*, 10th Dist. Franklin No. 12AP-1091, 2014-Ohio-674, ¶ 19, citing *State v. Reynolds*, 49 Ohio App.3d 27, 550 N.E.2d 490 (2d Dist.1988). It is only appropriate when the substantial rights of the accused or prosecution are adversely affected, and a fair trial is no longer possible. *Illinois v. Somerville*, 410 U.S. 458,

462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

**{¶71}** The victim's surprise testimony about being digitally penetrated was potentially prejudicial to both the defense and the state. The victim's credibility was undoubtedly put into question; the jury could have determined that the victim either was fabricating how the sexual conduct occurred, or that her memory was repressed. This conflict was within the province of the jury to resolve based on the other testimony presented. Accordingly, it could have been a tactical decision by counsel to continue with the trial and use the state's other witnesses to impeach the victim's testimony and credibility. *See State v. Gooden*, 8th Dist. Cuyahoga No. 88174, 2007-Ohio-2371, ¶ 38, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980) (trial tactics and strategies do not constitute ineffective assistance of counsel).

**{¶72}** Even though the testimony about Keller's girlfriend's daughters was irrelevant and potentially prejudicial, it was a tactical decision for trial counsel to not request a mistrial at any time subsequent to the victim's surprise testimony because had the mistrial been granted, the state could have reindicted Keller with additional charges of rape by force — a charge that would be difficult to defend based on the evidence. Clearly counsel was attempting to limit Keller's exposure to additional charges and penalties.

**{¶73}** Accordingly, we cannot say that counsel's performance was deficient to warrant a finding that Keller was deprived of effective assistance of counsel. Keller's final assignment of error is overruled.

**{¶74}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

MARY EILEEN KILBANE, P.J., and
MARY J. BOYLE, J., CONCUR